The next case is agenda number 21, case number 123152, Palm v. Holocker. Counsel, when you're ready, you may proceed. Thank you, Mr. Chief Justice. May it please the court, counsel. My name is Christopher Sokin, and with me at the counsel table is Attorney Phil O'Donnell. We represent Scarlett Palm, the plaintiff appellant in this case. This is a case about legislative intent. The privilege states that a physician is not allowed to disclose any treatment that the physician performed on a patient, except in 14 separate, enumerated exceptions. The one at issue in this case is exception 4. Exception 4 states that in any action brought by or against the patient, that exception disallows the privilege, quote, wherein the patient's physical or mental condition is at issue. The trial court in this case found that the defendant's physical condition was at issue. What happened in this case was that the defendant drove through a stop sign, made a left turn, and hit a plaintiff walking through a crosswalk in Lincoln, Illinois. The defendant, as it turned out in discovery, revealed that he requires physician approval to drive and had lost that approval at least once, and that approval was based on, quote, diabetic reasons. The plaintiff learned prior to filing a lawsuit from other people in the community that the defendant is legally blind and does not report accidents that he's in as fear of losing his license. The appellate court reversed the trial court's order that the defendant answered in discovery. The appellate court held that the phrase, in issue, in the defense to the allegations against them. The appellate court also held that the reason for the defendant's driving is irrelevant, and that only the, quote, driving matters and not the reason for the driving. The appellate court's wrong on both of those points. And as this is a legislative intent case, the place to start, I believe, is with the plain and ordinary meaning of the statute. The patient, if their condition is an issue, the privilege doesn't apply. It's hard to think of a more plain statement of the law in that statute. What more needed to be said than the patient brings this suit or the patient is a defendant? The privilege doesn't apply if the condition is relevant. There are at least eight cases in the appellate court that have held that is exactly how the privilege operates. The most important one, I believe, for this court is the BOTSIS decision. In BOTSIS, the defendant was under order from his doctor not to drive, that he had a seizure disorder, and multiple doctors had told him he shouldn't be driving. The people charged him with reckless driving. Excuse me, counsel. Did you say that there are eight states that have adopted your interpretation of issue, what an issue is? No, Justice. There are eight cases in the appellate courts of Illinois that have adopted that interpretation. Oh, okay. I misunderstood because in Griego v. Douglas, which is a federal case, the federal court surveyed the approach of the various states on this issue and concluded that the states overwhelmingly agree with the defendant's position. And indeed, that federal case in their survey said North Carolina was the only jurisdiction it could find in which a defendant's privilege can be waived by a plaintiff alleging that a defendant's physical and medical condition contributed to the collision. So can we start with the premise that regardless of how many cases are in the pipeline, I guess you said eight in Illinois, this court would be adopting an extreme minority position in light of that survey? I don't believe so. The court would be adopting the legislature's intent. So if Illinois is different than the other states, that was decided in the Capitol building. We're here today to decide what our legislature intended. And what our legislature intended was the plain and ordinary meaning of that statute. So if that case surveyed the states and said Illinois is not one of those states, they read the statute wrong. There's no way to read the statute in any other manner that says wherein the physical condition is an issue. And that's the error that the appellate court made. They needed to start at the plain and ordinary meaning of the statute. And they didn't. The appellate court never considered what an issue meant. If they were going to change the language of the statute to put it as affirmatively placed an issue, I guess exception to the exception, they would have had to say, well, that statute's vague. And as I stand here today, I cannot fathom a way in which that statute is that says wherein the condition is an issue. Here's the next question, then. What is the issue that we're to be focusing on? Is it duty? Is it breach? Is it causation? What is the issue? Can you be more precise about that? I can. It's going to depend on what type of case it is, obviously. Some of the criminal cases say that the issue is what is an element of the charge. Therefore, it's an issue in some of the DUI cases. In a negligence case, in this case, I believe it's duty. In an automobile accident, I believe it would be the duty because every driver owes a duty to other drivers on the road to drive safely. Is that the standard of ordinary care? The standard of ordinary care under the circumstances. And that's the issue that the defendants have and the defense counsel have picked on was that, well, this would open some sort of And the answer to that is if it's an issue for duty, it's going to have to be revealed because that's the law. Well, let's take a step back. Why is it an issue for duty? My question is, as you describe, we usually look at negligence cases that there is a duty to take ordinary care. How does that implicate the defendant's medical condition? If the defendant is driving while blind, he shouldn't be driving. He has to operate as a reasonable person under the circumstances. And if he's driving while blind, the reasonable option is not to drive at all. Don't drive if you can't see. That's the very reason why the state of Illinois told him, we have to have some physician tell you and tell us that it's okay that you drive for the safety of everyone else on the road. So when the state said, you need to have this, and when at least one doctor said, I can't give this to you, that became an issue. So the duty of someone with a medical condition is a heightened duty that's different from the duty of ordinary care? Basically, that's your argument? There's no, I think heightened would be the wrong word, Justice. The word would be under the same circumstances. We take the person as they find them in that circumstance. So wouldn't every defendant then, their potential medical condition be at issue? No. It would depend on the cause of action and depend on the condition. So for example, I don't care if the defendant has nasal polyps. I don't care if he has psoriasis. I don't care about any of those issues. Those would still be privileged under the statute because they're not an issue. They have no impact on his driving. But if he can't see, if he's blind in one eye or blind in both eyes or legally blind, that's an issue because it impacts his ability to drive and therefore it impacts his duty. I want to get back to this survey and where the states are on all of this because I'm a little confused by your answer. You said maybe the federal court got it wrong when they say North Carolina is the only one that agrees with your interpretation of this issue. Don't you argue that, I want to get the name right, Cramer v. Ossman and Pritchard v. Swedish American Hospital were abrogated by later criminal cases. Isn't that your argument? That's partially, yes. But isn't it true that none of the later cases said that they were abrogating these earlier cases? And isn't it also true that the civil cases, the ones that presumably the federal court would have looked at, are all in agreement on what it means for a point to be an issue in the case? I believe the only civil cases in Illinois other than this one are Cramer, Ossman, and Galindo. Galindo would agree with me. That's Galindo v. Rydell, Inc., in which they said that the plaintiff's medical condition is an issue and therefore the privilege doesn't apply. But the reason that Cramer and Ossman, why we argue they're wrongly decided is their misreading of Petrillo. And I'm not familiar enough with the survey that you are speaking of to know why the federal courts would have said that Illinois doesn't follow this because all of the criminal cases that I've cited follow that interpretation. Cramer and Ossman, I believe, are the outliers in that they both take one sentence out of Petrillo that says what was important in that case was that the plaintiff filed the suit and therefore opened the door to the discovery. But what they were talking about in that case was from the plaintiff's perspective. And if you read Petrillo and the ultimate finding of Petrillo was that truth and justice are a balance, truth and privacy are a balancing act. And that Petrillo found we need to balance this by saying we're not going to allow defendants to have ex parte communications with the plaintiff's doctors. It has to go through formal discovery. Petrillo also said exception four specifically was part of the legislature's balancing act of truth and privacy. And that strikes the right privacy that if the patient is a defendant, we're going to need to let that information come out in the open because the truth matters. And I believe that Cramer and Pritchard put too much emphasis on that one sentence that was describing the hypothetical situation when a plaintiff filed a case and that was about how they waive the privilege. In this case there's no waiver. This isn't a waiver issue case. The exception says the privilege doesn't exist. The condition is an issue. There's no privilege to waive because you didn't have it to begin with. What the appellate court did here in ignoring that plain language and I think I pointed out in my brief that there were 12 instances of this court's statutory interpretation rules that were violated. I stopped at 12 because it was a round number, but frankly there's a lot. If we're going to answer, as the court knows, the first place we have to start is to say that what the legislature used was vague. And as I said before, the language isn't vague. The language is frankly a great example that the legislature should use in the future about how to dial something down and make it easy to understand because the word and issue or the phrase and issue can be understood by anyone. We know what that means. We know what the dictionary definition of that word means. Frankly it's better than using the word relevant because a non-professional would probably understand that better than using the word relevant. The appellate court needed to decide this is vague before they could launch into what they did, but what they did was wrong. What they did violated everything that this court has put forward. They searched for a hidden meaning in the statute. There's nothing in the statute that would lead you to believe oh, what the legislature really meant was that when they set an issue they really meant when a defendant uses an affirmative defense to defend a claim. There's no way to get there from the plain language. The way that the court got there was by saying that what we are saying the statute means would just mean that relevant evidence is admissible and irrelevant evidence is inadmissible, but that's not true because the statute says one, the patient has to be a party and two, the condition has to be relevant. There are numerous cases in which relevant evidence is excluded because the patient is not a party. This court's case in Manos being one of them. There are plenty of cases where a plaintiff wishes to get medical records of other parties such as in malpractice cases. They're trying to dig up information on the defendant doctor and the courts have said no. Those other people aren't parties to this litigation. They have no interest in this and in that instance their privacy outweighs the need for the truth. But in every other case it's the opposite. When both parties are here in court, the state desires that the truth come out in civil disputes. So the court's reasoning on that regard about the relevant and irrelevant issue is just simply wrong. The legislature also, the appellate court also said the legislature, quote, would have simply stated the privilege does not apply in any litigation. But again, it only applies to parties. So there are going to be instances like Manos where the privilege doesn't apply or the privilege does apply. It has nothing to do with, it doesn't turn on relevance or irrelevance. You first have to get past the fact, is the patient a party? And then it turns on relevance and the appellate court missed that. And what the appellate court ended up creating here is a derogation of the common law further than what it already was. This privilege doesn't exist in common law. What the appellate court did was made it even stronger. This court's precedent says statutes and derogations of common law, we're not going to expand it the same way that this court says an evidentiary privilege shouldn't be expanded beyond its term, which is what the appellate court did. The appellate court also rendered the words unissued superfluous because now they don't matter. Now what matters is the fact that the privilege is unissued. The only real statutory interpretation that the appellate court did was when they tried to determine what an issue is through looking at Rule 215D of the Supreme Court Rules, which is obviously something the legislature did not draft. It's hard to find what the legislature's intent would be in something they didn't draft. And you can't find it in that anyway because that rule does not apply to this exception. That rule exists outside of the exception. What the appellate court did was say, well in that rule, because you have to have something more than an allegation, that must mean in the exception you must have more than an allegation. You can't just say that this person's medical condition contributed to this accident. The problem is the appellate court misread that rule. The rule says you have to have some sort of documentary evidence about the medical condition. And then the comment that the appellate court relies upon says mere allegation isn't enough because the rule says you have to have some sort of documentary evidence. That is why the comment says that. The comment is not a definition of relevance. It's not a definition of an issue. There's no barrier at all on the statute. You just said that the issue was whether or not the medical condition contributed to the accident. So is it relevant to causation? It could be. You can hear my question. Specifically, what issue are we talking about? You told me before the issue was the nature of the duty. Now you're telling me that the issue is causation. I'm sorry, Justice. I got confused with issue and an issue. As the language says, what is an issue? When the language says an issue, I believe they're speaking to a fact that is going to be relevant to the determination of the lawsuit. So in this case, that fact is his vision. And the reason is because his vision affects his ability to drive and he has a duty to drive safely. And if he is unable to drive safely, he has breached his duty. Because a reasonable person under the same circumstances as himself would have breached that duty if he's unable to see. So it's not about causation? Not in this case, no. Because there are accidents. He could have just not seen her. He was looking the other way. But when it comes to, well, I didn't see her or I couldn't see her, in this case, it would be a duty issue. I'm certain we could come up with issues where it would be a causation issue if someone had some sort of handicap where they didn't intend to do something but ended up doing it anyway, I suppose that would be a causation issue, not a duty issue. So it's possible that it could be that way, but I don't believe so in this case. The final point that I'd like to make on the statutory interpretation grounds is what the public policy of this state is. And the public policy of this state is to protect opposing drivers on the road from other people who are driving dangerously. What the appellate court has done here is create a situation where people are going to be allowed to drive in dangerous conditions knowing that their condition is not subject to discovery. The boss's defendant in the reckless homicide case, if the appellate court's opinion had come out before that one, the boss's defendant could very well have gotten off of a reckless driver's orders of losing consciousness while driving, would have never come into evidence. Many of the other cases where the defendant tells the paramedic, well, I just had 8 to 10 beers and then I went out for a drive, but that's between you and me because this is medical care. Those people might get off of those charges. What the appellate court has done is shift the public policy of Illinois from we need to balance privacy and truth to the truth doesn't matter so much, privacy all the way. And that cannot be the legislature's intent. Because if it was, we wouldn't have these criminal statutes punishing drunk driving before the accident happens. It would be, well, we're going to let you drive home and we'll see if you make it first. We don't have that. We're going to punish the drunk driver now because that accident can't be undone. What the appellate court has done then is throw that out the window and say, well, if you make it home, I guess that's fine because it's going to be privileged and nobody's ever going to know. So maybe you get pulled over and maybe it's a lane usage violation instead of a DUI. Maybe it's not a reckless homicide anymore. Maybe it's just negligent driving. That's going to have a big impact on the state. It's going to allow some class of people to think that they are free to drive if the penalties for that driving are lessened or in some cases even removed by wielding that grip. The other major point that the appellate court makes is regard to negligence. The appellate court made, I'll say one offhand comment. It's not necessarily the central holding of the case, but it's that the defendant's driving and not the reason for his driving are at issue. Of course, we know that's not the case all the time because drunk driving exists. Drunk driving has to matter. That's been the law for 200 some years. The driver has to be operating under the same circumstances as another driver. Thank you. Counsel? Good morning. May I please have the court. My name is Dan Compton. I'm the attorney for the defendants in this case. First I guess to ask you to keep my associate out of jail. But I don't even think that I can take the 20 minutes I'm going to make it easy for you. I do have a couple of questions. Before you get started on your argument, how is the appellate court's opinion not wholly an advisory opinion? The statute begins, no physician or surgeon shall be permitted to disclose any information he or she may have acquired in attending any patient. But the specific order before the court does not involve a physician or surgeon being asked to disclose information. The order appealed from is simply a contempt order. You referenced that already in your couple minutes. Because the defendant refused to answer two simple interrogatories that didn't involve what I just said. Well, that is a good question. And when the chair of the appellate panel asked me, I told him that's a very good question. And I said, if you would like, we could not decide this issue. Save the briefs. We'll go back. And the genesis of the answer is that we objected to these questions because we know what's next. And after listening to the counsel for the plaintiff, you know what's next. Give us this list of your medical providers. We will send them a subpoena for information that we say is relevant and privileged. We will move to quash the subpoena. And we still haven't gotten to a doctor actually handing over the records. We've got the same issue a month later. The plaintiff in the scope of discovery is entitled to search for, as the defendants are, relevant information or what will lead to relevant information. Now that's in the Supreme Court rules right off the bat. And the reason I think it's important to keep this in mind is this whole privilege section is in the Code of Civil Procedure. This whole privilege section says these rules apply to parties in litigation. So you can't go look at the medical privilege in a vacuum because the appellate court was exactly right. And I think they mentioned we're cognizant of the Supreme Court's admonition to try to stay within the issues. But here we've got a case that we are going to be here anyway arguing this exact same issue. And the appellate court recognized that we'll get a subpoena. The defendants will object. They'll move to quash. And we'll be the only bar to this court before the privilege has been violated. Because if you listen very carefully, if relevance is the only bar, then it's Katie bar the door. Under the rule they're asking this court to promulgate, they can issue a subpoena for every one of Mr. Holaker's medical records in the search for relevance. If certain of those medical records turn out to be not relevant, the privilege is already waived, the privilege is already destroyed, the public policy is already injured. But I would put to this court that it was interesting that the very last questions in this case dealt with the DUI issue, with the criminal issue versus the civil issue. Because I will admit it was very interesting when we looked at people versus boxes. And we look at the third district opinion, the very first one that said the privilege doesn't apply to the DUI case. Because each of those cases did not say the defendant's physical condition was relevant to the charges. It said the defendant's physical condition was an exception, was required to prove to be successful. Now let's look at the plaintiff's case. Your questions, Your Honor. The plaintiff must prove breach of duty, proximate cause, and damages. If he never proves one iota of evidence on the defendant's physical condition or medical condition, he can still prove duty, breach of duty, proximate cause, and damages. So the exception can't be based on relevance. An issue in the case has to mean something different than relevance. Because he can prove his case without reaching the issue of the defendant's medical condition. Mr. Thompson, but isn't in the record the information showing that the defendant's vision actually is an issue? The plaintiff was told by someone, I don't know who, knows he's actually legally blind. He's had numerous accidents and citations over the years. And he potentially has three doctors who told him he shouldn't be driving. So isn't that an issue? Well, it is an issue in one sense, just like how badly the plaintiff was hurt is an issue, a global issue. But here's the interesting thing about that observation. The plaintiff has come in and filed a simple auto case. Now, in discovery, I search and have your clerks do an exhaustive search for an affidavit from anybody. This is somebody's cousin's boyfriend's hairdresser said, oh, Holliker's blind. And the plaintiff stuck it in a brief and said, somebody's cousin's hairdresser says the plaintiff's blind. So therefore, suddenly it's an issue because it would be interesting or it would be helpful or it would be relevant if it turns out Mr. Holliker's blind as a bat and actually that's the reason he hit a pedestrian is because he couldn't see rather than inadvertence. Which is not acting as a reasonable man. So suddenly we're off and running. And we'll be off and running in every single case. I have, when I came in this morning, they bonded my hip. I have an artificial hip. It's the right hip. It's the hip that goes from the gas to the brake. How good is that hip? How much pressure can I put on that hip? How fast can I get from the gas to the brake? Well, I am a little old. I have a little high blood pressure. Let's dig into that and see what a doctor can find. So when we get to... Let me ask you a question before you waive any privileges. You know, you mentioned botches, but as I read botches, what I think it said is the defendant's medical history of losing consciousness was probative of whether he was reckless in driving when he knew he had such a condition. So why would that very same reason apply in a civil negligence case? Well, because the state had to prove, and that is why I listed duty, breach of duty, approximate cause and damages. The state had to prove a physical condition. And the judge went into that in the botches decision. As a matter of fact, now the greatest things in the world slip my mind when I'm under pressure, but the same judge in the botches decision cited Cramer in support of his decision. It is an issue here because it's an element that the state has to prove. And the same judge was a concurring judge on Cramer, and the plaintiff says somehow Cramer and botches conflict. And I would posit to you that if the plaintiff's right that an issue just needs relevance, it would be interesting, it would be helpful to my case. If it wasn't privileged, it would be admissible. If that was the issue, then he's right. Botches and Cramer conflict. But they were written by the same judge, or rather a judge wrote one opinion and concurred to the other. They were only three years apart. So you gentlemen and ladies, you justices can say, maybe you didn't know what he was talking about three years later. Maybe you forgot about the case he cited in support of his decision. But I think it's more reasonable to say, then you don't get into this mire of statutory interpretation. Because I don't think anyone needed to do any statutory interpretation either. I think they said how does a pardon's physical condition become an issue? And I don't think Petrillo was mistaken in any way, shape, or form by the appellate courts in Cramer or the appellate courts in Pritchard. Because the appellate court in Petrillo said, look, here's what happens. The plaintiff says, I'm hurt. One of the issues in this case, proximate cause of damage is I am hurt. I will still be hurt. Go ahead and look at my medical records. The defendant doesn't do that by saying I'm not negligent. It is funny because some of the cases, the out-of-state cases cited by the plaintiff to this court in his reply brief prove this perfectly. There was a case where a guy, there was evidence that the defendant had vision problems and the appellate court made mention this guy was driving all the way off the road at the time of the accident happened. He didn't need to prove any vision problems. He was negligent because he was driving off the road. In this case, if in fact, and that's just an allegation in the plaintiff's claim right now, if in fact Mr. Holliker hit a pedestrian, he was either using due care or he wasn't using due care. We have instructions on that. Your Honor, it's 70-01. The duty of every driver to exercise ordinary care at all times to avoid placing himself or others in danger. And then the definition, 70-01 says use 10-02. When I use the term ordinary care, I mean the care a reasonably careful person would use under circumstances. Counsel, we do, I mean, the majority of opposing counsel's argument is on statutory construction. This court is going to have to figure out what an issue is. And since you're mentioning other statutes, the New Mexico statute says, for example, if a patient relies on a physical, mental, or emotional condition as part of a claim or defense, no privilege shall apply concerning confidential communications made relevant to that condition. But that's not what our statute says. Our statute says an issue. So how do we deal with that? We deal with it just the way Cramart and just the way Pritchard did. They said, well, what happens when a defendant says, I've reached no duty because I had a sudden medical condition, whether that be a heart attack or a case of the vapors or anything else, when a defendant comes in and says, I am not negligent, therefore the plaintiff can't prove duty, breach of duty, proximate cause of damages because of my medical condition and it excuses me. Then, as the appellate court pointed out, doors wide open for the plaintiff to get every medical record and test that assertion that the defendant has made, saying my medical condition is an issue in the case. And that's how it becomes an issue. That's why Petrillo's interesting. Counsel would say, well, Petrillo was only speaking from a plaintiff's perspective when Petrillo says a plaintiff opens the door by filing a complaint and making this claim an issue. But he wants to deny that same objection Petrillo says, hey, plaintiffs, you only waive this privilege by filing your complaint and explicitly or implicitly making it an issue. And he wants to say, yeah, but when it comes to the defendant, I get all of Holaker's medical records even if he's not here in court saying, plaintiff, you can't prove your case because I had a sudden medical emergency. And that's why you don't even need to do any statutory interpretation beyond saying, how does it become an issue for a plaintiff? How does it become an issue for a plaintiff? I think it's the appellate court's interpretation and the one that you urge us, which isn't it too restrictive? The defendant simply would just never affirmatively put their physical or mental condition at issue. They just never would. Well, I agree, and that's their prerogative. But isn't that just too restrictive? Well, it depends on the answer to your question, too restrictive for what? Why would the defendant put his or her medical condition at issue if they thought that the medical condition and not a lack of ordinary care was the cause of the accident? The option is, as I think you asked, Your Honor, the option is every case we've got a fresh analysis of duty and every case a fresh analysis of causation if we only say relevance. The answer to the plaintiff's question on statutory interpretation is that the legislature, number one, would have just said if relevance was the test, they would have said the privilege doesn't apply to any party in the litigation. They wouldn't have to go on and say wherein. That wherein means something, and it means what comes after the wherein modifies it. So it's just not a party in the litigation. It's litigation of a certain type where the physical health is an issue, and court upon court says nobody can do that for you except you. A defendant can put it at issue. The plaintiff puts his own care at issue. Now I want to point out one other interesting thing. Mr. Compton, if we agree with your position that the defendant hasn't placed his medical information at issue, what about the fact that can plaintiffs still get what the defendant turned over to the Secretary of State in order to obtain his driver's license? Well, that's an interesting thing. I quoted the provision of the Secretary of State says that's privileged as well, and I would say that there's an interesting statutory situation where the Secretary of State says if we're satisfied that you can drive after hearings or whatever happens, then you're held to the care of an ordinary, reasonable man, and you can't, you don't have any special consideration. I know you disagree with this from that answer, but there's a case out of Minnesota. Let me tell you what they said about this, and tell me why they're wrong. It says the purpose of the physician patient privilege is to protect confidential information acquired by a physician while attending a patient for the purpose of treatment. The purpose of the defendant's disclosure to the Department of Public Safety was to obtain driving or licensing privileges and not to obtain medical treatment. The defendant has not maintained the confidentiality of his medical records, and he has communicated that medical information outside of the context of patient seeking treatment. By so doing, he has waived his right to assert the privilege as to the information disclosed. Now why is that analysis incorrect? Well, it may be perfectly correct for Minnesota. Illinois has a statute that says it's privileged. So, and it's the same, I can't speak to all of the other states that have addressed this, except to say apparently, Your Honor, you found a case where it said most of them agree with me. I'm happy about that, but just since I've got three minutes, one interesting thing I always find interesting things on my way to look up other things. Since the BOTSIS decision, and since the CREMA decision, the legislature has amended the medical privilege and added a provision for criminal and DUI cases. And it says specifically, criminal and DUI cases, this privilege is inapplicable. Now it's interesting that the over across the street, in light of the CREMA decision, in light of the criminal decisions, they said we're going to amend the statute, and they didn't take care of the problem allegedly presented by Pritchard and CREMA. They left it alone. And again, something I found on the way to tonight, I think it was 2015 they added that, but I could be wrong on the date, but they've amended it and they left it, in light of the court opinions, they left it alone. So you've got to say, according to the tenants of statutory interpretation, the legislature was aware of how the courts of the state addressed the issue, and they left it. And that should tell us something. And it should tell us that the appellate court opinion and that CREMA and that Pritchard are a perfectly valid way to distinguish them from the criminal line of cases, and that is to ask, how does something become an issue in a civil versus criminal case? Well, Mr. Compton, let me ask you this in terms of the context of this case and following up on Justice Thomas. We're not at the doorstep of the doctor's office with a subpoena. This dispute arises in the context of a discovery objection. And there was a hearing, I can't remember, I think it was the exactly if it was Judge McCuskey or Judge Keefe, but the section that I found in the briefs and the facts, Judge Keefe ruled on the discovery objection, which you're using the statute, saying, hey, we do have, he does use the phrase, we have an issue here as to vision, but not to allow a fishing expedition. So isn't that really narrowed, the question is, answer the question, not turn over records, answer the question about medical care, vision care. That's the subpoena. Well, again, that specific question asks questions that are privileged and not at issue, because under the law, under the appellate court case, there's now three dealing with civil actions. I know your time is up, but what was the specific question that you refused to answer? We refused to give a list of previous treating physicians. So you're taking the position that listing the physicians is privileged information? Well, if you read the interrogatories, they say list the physicians and what they've treated you for. So the interrogatory is really in two parts. During the previous five years or whatever it is, some attorneys have stretched it out to ten. List your, have you had any medical care, list the physicians, what they've treated you for. And we said, no, we're not going to do it. It's privileged, because we haven't come into court and said, I hit this poor lady not because of negligence, but because I had a heart attack or an asthma attack or a diabetic coma. And if we hit her and a jury finds we should have seen her as a reasonable person, we're not asking for any special consideration based upon our disability or our physical condition. Mr. Compton, I have a question. Yes. You can turn over medical information to the Secretary of State and not waive that privilege? That's what the vehicle code said. I was surprised to see that, Your Honor. My reaction was exactly the same. When the vehicle code says, you know, because I look it up, I'm like, I needed a letter from a doctor. I go, I wonder what those provisions are. I've never looked at them before. So I looked at them and I quoted them in my brief. So if we're talking about the legislature, I'd say they've had it sewed up pretty nice. Mr. Compton, your time has expired. You've abruptly filled the 20 minutes with the assistance of my colleagues. Thank you. Reply. The question about the advisory opinion, I can end that line right now. We have these records. We already have them. There was a HIPAA order entered by the trial court that was never appealed. And in the lag time between when the contempt sanction was entered and when the appeal occurred, we got the records. Then the appeal occurred, so they're not in the court's record. I know the answer that you all want to know. I probably can't say it to you because it's not in the record. And the appellate court ordered that we were not to do anything with the records, but we know the answer. Even though he didn't tell us who all of his doctors were, we know the answer through, as Justice pointed out, there are people in the community who know this man. Laken is not Chicago. Laken is a small town. There are only a few optometrists in that town. We know the answer to that question. Mr. Sokin, is that it? Yes, it is. Is this case now moot? I mean, you have the records you were trying to get? It's not moot because the appellate court has ruled that the privilege exists and we were ordered to destroy the records. Then it was appealed from the appellate court's decision. So it's not moot because of that issue, that we can't use them, even though we know the answer, even though we know what they are, even though we know it would be admissible. The appellate court has said we cannot use those records at all. So as far as the advisory issue, I don't believe that's an issue because we have the records that are in our possession. We just can't use them. Also, somewhere in your reply brief, you talk about potentially amending the complaint to Will Fulton Watt, to add Will Fulton Watt, correct? Would the physical condition of the defendant and then his decision to drive, would that be relevant to or be an issue in a Will Fulton Watt claim? Absolutely it would. It would depend on the extent of the driver's condition. There are people who could drive with certain limiting conditions. There are modifications that can be made to vehicles to allow people with disabilities to drive. But in a Will Fulton Watt claim, if there were evidence that a doctor said you shouldn't be driving, and they drive anyway, that's Will Fulton Watt. That would clearly be an issue. The state that this case reached the court in was in the middle of written discovery. So we don't have depositions. We don't have all of the written discovery we'd like to do. We haven't reached the point where we can, well, depending on what happens in this case, we haven't yet reached the point until we came here on appeal to amend our complaint, to add a charge for Will Fulton Watt conduct. That probably will occur on remand, regardless of how this court rules, because even if we don't have this medical information, there are certainly other evidence, and other evidence that we use to determine what happened, to find out what condition this man has. If he tells another person in town, hey, I'm blind in my left eye, hey, I can't be driving, that's admissible evidence. That could still be used to support the charge that Justice Eaton just mentioned. And that's how people are going to find these things out, even without this, and that's how we found it out, even without the knowledge of who his doctors were. What counsel cited about the jury instructions, he kind of tailed off at the very end of the jury instruction, which was under the same circumstances, which comes back to the issue in the beginning of an issue. It's under the same circumstances. That's been the law in England and then in this country for hundreds of years. It's under the same circumstances, so for them to say, well, you can still prove duty, you don't need this to prove duty, well, we need it to make our job a lot easier. We need it so that the jury can understand this is the actual duty he had. He didn't just have a duty to drive as a normal person. He had a duty to drive as a normal person under the same circumstances that he had at that very time. Do you have a case that says that, in terms of the duty analysis, that a person has a duty depending on their physical condition? I do. I cited, I believe, at Vincula is a decision of this court. I think there's five or six cited in my brief, along with the third restatement of torts, the second restatement of torts. There's a Chicago Railroad case that I cited from this court in my brief as well. Are you asking us to adopt the restatement? The second restatement has already been adopted. Is it the second or third? It's both. And did we adopt this section that you're talking about? You adopted the, excuse me, I don't know if this court has adopted it. The appellate court has adopted section 283C, which is a section about this. It still exists in the third restatement as well, but preexisting the restatement, there are cases from the early 1900s where this court had said you have to act as a reasonable person under the circumstances. A physical condition? Both. Physical medical condition, correct. And then there's the Chicago Railroad case as well. Both of those say it's a person under the circumstances. One of the cases we didn't talk about that hasn't been brought up yet is this court's decision in Kunkel, which was one of the Gus v. Taylor sort of companion cases, in which this court held that the version of the statute at that time that said plaintiffs, you've just got to turn over every record you've got, was unconstitutional. But the reason that was unconstitutional was because the statute said nothing about relevance. And this court said it is reasonable to turn over medical records that are relevant to the condition at issue. That the Constitution doesn't protect you from all discovery, it protects you from irrelevant discovery. And if I were to say, like I said before, if you went to a dermatologist, I don't care. If you went to a podiatrist because he had toe fungus, I don't care. That's privileged. It has no relevance. But if he goes to three different eye doctors and tries to convince one of them to clear him to drive, we care. We care because his duty is not to drive. If two out of the three said, you shouldn't be driving, and eventually he hits on one person and says, sure, I'll sign with him, we would care. That would be a breach of his duty because two doctors told him not to drive. And then if he's telling the Secretary of State, here's this one, but he's leaving out the other two, that's more evidence for a willful and wanton conduct charge. The statement that counsel made that the legislature had amended the statute and added DUI exceptions isn't really accurate. The statute was amended for blood alcohol tests. That's wholly different than saying, well, it was amended for LTUIs because numerous cases that I cited were non-blood draw tests where the defendant refused to have the blood draw or that they never got around to doing the blood draw. I believe Hoppeck is one where the driver said, I had 8 to 12 drinks. He told the paramedic, I had 8 beers and now I'm out here driving. They never did a blood draw. So the only exception that applied in that case was 4. For BOTCIS, there's no drinking there. It's whether or not you took your prescription drugs. The blood alcohol test exception isn't going to apply. So exception 4 is going to come up in other cases no matter what because the legislature did not have the exception that the defendant alleged was actually there. The question about, well, in BOTCIS they cited CRIMA, so therefore CRIMA is still good law. They cited CRIMA for the standard of review. They didn't cite CRIMA for any reasoning related to, oh, this is not privileged, this is privileged. And it wouldn't make sense either way because BOTCIS clearly did the exact opposite of CRIMA and said, this has an issue, it's an issue. And the appellate court is free to change its mind on cases that this court hasn't ruled on yet. So it's certainly possible they just changed their mind to align with all of the other cases that have already been decided. POPIC and CROWS, all of the other exception 4 cases that have all held the same thing. Counsel said that, well, this is going to result in a fresh analysis of every negligence claim that comes before the court. And the answer is, it already was going to. If the court was interested in easy answers, it would have went to medical school and not law school. We're here to examine these claims as the law applies to the factual situation. And it's going to be different every time. That's why this court faces difficult issues sometimes in applying very different sets of facts or even sets of facts that have minor differences. So every case is a fresh analysis. Every single case is going to turn on those individual facts and how they affected what happened. There could be other cases where the defendant's vision isn't going to matter. If he slandered my client, his vision might not matter at all. So we can't simply say that we need to avoid this because it's going to make the court's life difficult. The court's life is already difficult. The court's life is always going to have to look into these things. And that's something that the defendant has overlooked. We have trial courts for a reason. The trial courts exist to wade through these issues to determine relevance. And that's why we give the trial courts so much leeway to decide these things. So we already have a method to resolve any of these problems. Thank you. Thank you. Case number 123152, Palm v. Holliker, will be taken under advisement as agenda number 21. Mr. Sopin, Mr. Compton, we thank you for your arguments today, and you are excused.